David J. SPARKMAN, Plaintiff,

v.

The PRUDENTIAL INSURANCE
COMPANY OF AMERICA,
Defendant.

No. 1:04–CV–00138PGC.

United States District Court,
D. Utah.
Northern Division.

Jan. 25, 2006.

Randall R. Smart, Jeffrey A. Callister, Smart Schofield Shorter & Lunceford, Murray, UT, David K. Lauritzen, Bountiful, UT, for Plaintiff.

Scott M. Petersen, David N. Kelley, Jon C. Martinson, Fabian & Clendenin, Salt Lake City, UT, for Defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

CASSELL, District Judge.

This case, brought under the Employment Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.*, arises from plaintiff David Sparkman's contention that Prudential wrongfully denied him disability benefits under his employer's benefit plan. Both parties filed a joint administrative record and filed for summary judgment (# 34, 36). The court GRANTS Prudential's motion for summary judgment (# 36) and DENIES Mr. Sparkman's motion for summary judgment (# 34).

### STATEMENT OF FACTS

For the purpose of resolving these competing motions for summary judgment, the court finds the following relevant facts to be undisputed. While an employee of Fidelity Acceptance Corporation, Inc., Mr. Sparkman became a participant in and a beneficiary of a long-term disability plan provided by his employer. The plan is funded by a group long-term disability insurance policy provided by Prudential. Prudential is named as both the claims administrator and fiduciary for the policy. The policy constitutes an employee welfare benefit plan as defined by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001. The policy contains the following discretionary language:

"Total Disability" exists when Prudential determines that all of these conditions are met:

(1) Due to sickness or accidental injury, both of these are true:

 (a) You are not able to perform, for wages or profit, the material and substantial duties of your occupation.

 (b) After the Initial Duration of a period of Total Disability, you are not able to perform for wage or profit the material and substantial duties of any job for which you are reasonably fitted by your education, training or experience. The Initial Duration is shown in the schedule of Benefits.

(2) You are not working for wage or profit at any job for which you are reasonably fitted by your education, training or experience.

(3) You are under the regular care of a Doctor.

"Partial Disability" exists, after a period of Total Disability, when Prudential determines that all of these conditions are met:

(1) Due to the same Sickness or accidental injury that caused your Total Disability you are not able to perform, for wage or profit, the material and substantial duties of your occupation on a full-time basis.

(2) You are working for wage or profit:

 (a) at your own occupation, but you are not able to perform your duties on a full-time basis; or

 (b) at another occupation.

The amount of your monthly earnings is your Partial Disability Earnings.

(3) Your Partial Disability Earnings are not more than 80% of your Pre–Disability Earnings. Your Pre–Disability Earnings are the amount of your monthly Earnings before your period of Total Disability began.

(4) You are under the regular care of a Doctor.

On October 13, 1995, Mr. Sparkman stopped working and claimed a disability due to severe atopic eczema allegedly induced and compounded by stress. Prudential initially approved Mr. Sparkman's claim for long term disability benefits, paying benefits from February 1996 of $4,310 a month. Mr. Sparkman provided records from several doctors, all indicating in various notations that Mr. Sparkman had a disabling condition that made it difficult to return to work. And in 1998, the Social Security Administration determined Mr. Sparkman eligible for disability benefits beginning in April 1996.

In 1999, after continuing medical review of the records provided by Mr. Sparkman, Prudential concluded that he was not under the regular care of a doctor and that he was no longer precluded from performing the material and substantial duties of any occupation for which he reasonably fit. Mr. Sparkman's treating physician, Dr. Simon, had only documented four office visits between June 1995 to January 1999, which Prudential viewed as not generally consistent with a totally disabling condition. At that point, Prudential informed Mr. Sparkman that it would stop paying benefits. Mr. Sparkman appealed Prudential's decision, and Prudential continued to pay Mr. Sparkman for a limited period during the appeals process.

During this appeals process, Mr. Sparkman submitted several doctors' reports to Prudential.[1] For example, Dr. R.A. Jelaco indicated that Mr. Sparkman's condition "is non-curable . . . [and] it would be beneficial for him to stay on current therapies as required and also maintain his current disability status."[2] Dr. Willard Maughan found that Mr Sparkman had "an extensive history of atopic dermatitis, which is stress sensitive . . . [and] that it is very likely that if he were to return to work, and the stresses of work, that his atopic dermatitis would flare remarkably."[3] Dr. Stephen Thomson stated that "it has been found that [Mr. Sparkman's] dermatitis flares significantly with emotional stress . . . [and there] is a very good possibility that if he is required to return to work[,] he will be unable to carry out the necessary functions of his employment because of a flare of acute dermatitis . . ."[4] Doctors Trent Holmberg and Bertram Caruthers, Jr. both indicated that Mr. Sparkman's history suggested a return to work would precipitate another eczematic episode and that Mr. Sparkman should request disability to remove him from his work situation.[5]

During this process, Prudential also requested information from 1992 to 1995 in order to ascertain his condition before his request for disability coverage from Prudential. Mr. Sparkman contested the relevance of these medical records, and declined to respond to these requests. He

1. All of these physicians made these statements in 2002, except for Dr. Caruthers, who made his statements in 1995.

2. PRU0153.

3. PRU0154.

4. PRU 0176.

5. PRU 0177–0178, 0267–0269.

did, however, continue to send information to Prudential for its consideration, including color photographs of his condition. Also, he included his Social Security Disability determination file, which had declared him disabled under the Social Security Administration's standards. Another doctor who examined Mr. Sparkman at Mr. Sparkman's request, however, indicated that as of 2000 there was "no documentation presented that he has ever seen a dermatologist" and that he was "not willing to [see a dermatologist or obtain records from one he had seen previously stating his disability]." [6] This doctor indicated that Mr. Sparkman had "improved significantly as long as he remain[ed] off work" but was subject to "continued flare ups [with] stress." [7]

While considering Mr. Sparkman's claim during the appeals process, Prudential arranged for independent reviews of his medical file. Prudential made arrangements for Mr. Sparkman's file to be reviewed by an independent medical reviewer, namely Elizabeth F. Sheretz, M.D., M.B.A., Assistant Dean, Professor and Director of Occupational and Contact Dermatitis at Wake Forest University. After review of all the documents provided by Mr. Sparkman, including medical records from his previous and current physicians, Dr. Sheretz estimated that Mr. Sparkman had a "10% impairment of the whole person due to skin disease[, but that w]hen his skin flares up, there may be temporary increase to up to 20% impairment of the whole person." [8] In her eighteen years of experience of managing complex referral patients with chronic dermatitis, Dr. Sheretz had "not seen a patient with hand and foot atopic dermatitis with [Mr. Sparkman's type of work] who, with medical maintenance therapy, had to cease work due to skin disease." [9] She also noted that, in her experience, "emotional/psychological stress does not cause incapacitating dermatitis to occur on an immediate basis (e.g. while in a meeting) . . . [and that it had not been] documented that [environmental factors in the workplace or home had] been considered and managed for [Mr. Sparkman]." [10] Dr. Sheretz concluded that Mr. Sparkman had no limits due to skin disease based on the history available and that he should avoid wet work, prolonged walking, and skin contact with ingredients known to irritate or dry out skin. She also stated that a psychiatric evaluation would be helpful. She ultimately concluded that "despite occasional treatable temporary flare-ups, [Mr. Sparkman could] return to work in any occupation for which he is reasonably fitted by education, training and/or experience." [11]

Mr. Sparkman filed rebuttals to Dr. Sheretz's independent report, including information that he had seen at least two dermatologists and had undergone extensive tests for contact dermatitis and exclusionary diets for allergies. He argued that Dr. Sheretz did not have a complete medical history, which rendered her conclusions invalid, and that cessation of work was part of his "ongoing treatment" by his doctors. Prudential requested any additional information Mr. Sparkman would like to provide in order for his medical history to be complete. Mr. Sparkman acknowledged this request, but declined to provide any further information not previously available to Prudential. In a later

---

6. PRU 0502–0503.

7. PRU 0548–0549.

8. PRU 0544–0547.

9. *Id.*

10. *Id.*

11. *Id.*

supplemental letter, Mr. Sparkman conceded that Prudential had most of the information that he had already provided, but he still claimed the report had numerous errors. Mr. Sparkman again took issue with Dr. Sheretz's conclusions, but did not provide any new evidence from doctors or other sources to prove that her conclusions were wrong based on the available information.

Prudential further arranged for an independent psychiatric review of Mr. Sparkman's medical records by Stephen N. Gerson, M.D., M.S.M., who addressed the question of whether plaintiff had a psychiatric condition causing his eczema. Dr. Gerson concluded that Mr. Sparkman was not suffering from a psychiatric disorder and that his ability to return to work was not affected by a psychiatric illness or impairment. Prudential finally concluded that medical records and the independent medical reviews demonstrated that Mr. Sparkman was no longer disabled and subsequently ceased all long term benefits payments. After a further appeal, Prudential upheld its denial and reported its final denial to Mr. Sparkman on February 25, 2003.

Mr. Sparkman then filed this case in state court, where it was removed to this court. As amended, it is an action to recover benefits due under the terms of the plan, to enforce rights under the plan, to clarify Mr. Sparkman's future benefits under the plan, and for prejudgment interest. Mr. Sparkman brought these ERISA claims pursuant to 29 U.S.C. § 1132(a)(1)(B). In an earlier order, the court granted Prudential's motion for partial summary judgment and announced the proper standard of review for the instant case. The court concluded that Prudential had appropriately retained discretionary authority, that an inherent conflict did exist, and that Prudential was entitled to have its decision to deny benefits to Mr. Sparkman reviewed under a sliding-scale arbitrary and capricious standard. And the court held that the administrative record filed by the parties would govern the proceedings of this case.

In light of that earlier order and of the completion of all discovery, the parties have now filed cross motions for summary judgment.

## STANDARD OF REVIEW

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall be rendered ... if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." [12] In applying this standard, the court must examine the evidence and reasonable inferences therefrom in the light most favorable to the non-moving party.[13]

In its earlier order, the court found that Prudential's independent investigations and evaluations demonstrated that its conflict of interest was insignificant, resulting in a minimal conflict of interest for Prudential under sliding-scale review. Accordingly, the court explained that Prudential's decision to deny benefits would be given a high amount of deference, being reviewed under the arbitrary and capricious standard with the scale of deference sliding toward the side of increased deference to Prudential. The court did note that the amount of deference given to Prudential's decision might change based on

---

**12.** Fed.R.Civ.P. 56(c).

**13.** See Gaylor v. Does, 105 F.3d 572, 574 (10th Cir.1997).

the evidence later presented. Indeed, this court noted in its earlier order that "there [ ] is an inherent conflict of interest[ ] when an administrator or fiduciary also operates as the insurer,"[14] as in this case. Such a "conflict must be weighed as a factor in determining whether there is an abuse of discretion."[15] And in this case, as the "plan administrator operates under . . . an inherent conflict of interest . . . an additional reduction in deference is appropriate."[16] "Under this less deferential standard, the plan administrator bears the burden of proving the reasonableness of its decision pursuant to [the Tenth Circuit's] traditional arbitrary and capricious standard."[17] "In such instances, the plan administrator must demonstrate that its interpretation of the terms of the plan is reasonable and that its application of those terms to the claimant is supported by substantial evidence."[18] This court found, however, that even employing the less deferential standard, it would still evaluate Prudential's decision to deny benefits under the arbitrary and capricious standard with the scale of deference being slid toward the side of more deference to Prudential.[19]

 The Tenth Circuit's "sliding scale" approach mandates that "the reviewing court will always apply an arbitrary and capricious standard, but the court must decrease the level of deference given to the conflicted administrator's decision in proportion to the seriousness of the conflict"[20] Because the purpose of this "sliding scale" approach is to lessen the level of deference to the degree necessary to neutralize any untoward influence resulting from an inherent conflict,[21] the court will not adopt the "sliding scale approach" if Mr. Sparkman shows there is a conflict of interest between the independent evaluations and Prudential. Indeed, unless the conflict of interest is "so strong as to eliminate *any* deference . . . [the court] will uphold the fiduciary's interpretation if it is reasonable."[22]

 Mr. Sparkman attempts to eliminate any deference by alluding to a conflict of interest. Indeed, Mr. Sparkman argues that Prudential's use of two independent medical experts to provide independent medical analysis of Mr. Sparkman's medical records insufficiently trumps his own citations from six physicians that conclude his continued employment might result in more eczematic episodes. In these arguments, however, Mr. Sparkman fails to provide any evidence contradicting Prudential's position that its conflict of interest is insignificant.

 Rather than offer any evidence that the independent medical reviews were tainted or presented a serious conflict of interest, Mr. Sparkman only offers more excerpts of reports from his own doctors. Mr. Sparkman argues that "there is ample evidence indicating that [Prudential's] in-

---

**14.** Order on Sum. Judg. Standard, No. 26, at 10 (D.Utah Apr. 22, 2005).

**15.** *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989).

**16.** *Fought v. Unum Life Ins. Co. of Am.,* 379 F.3d 997, 1006 (10th Cir.2004) (quotations omitted).

**17.** *Id.*

**18.** *Id.*

**19.** Order on Sum. Judg. Standard, at 13.

**20.** *See Chambers,* 100 F.3d at 825–27.

**21.** *Id.* at 826.

**22.** *Lefler v. United Healthcare of Utah, Inc.,* 72 Fed.Appx. 818, 2003 WL 21940936, at *4 (10th Cir.2003) (unpublished opinion).

vestigation leading to its decision to deny [Mr. Sparkman's] benefits was inadequate." [23] Yet alleged inadequacy of an investigation is not positive evidence of a conflict of interest. Accordingly, the court will continue to review the "plan administrator's decision under the arbitrary and capricious standard" and "is limited to the administrative record" submitted by the parties.[24] Indeed, since Prudential retained discretionary authority, the insurer's interpretation and decision must be upheld "unless it was arbitrary and capricious" [25] and as long as the conflict of interest did not taint any decision.[26]

### DISCUSSION

■ Under the established standard of review set out by the court, this court reviews "Prudential's decision to deny benefits under the arbitrary and capricious standard with the scale of deference being slid toward the side of more deference." [27] "The plan administrator bears the burden of proving the reasonableness of the decision pursuant to the court's traditional arbitrary and capricious standard." [28] Mr. Sparkman argues that Prudential's decision to terminate his long term disability benefits was arbitrary and capricious, and therefore the court should rule in his favor on summary judgment. He contends that

Prudential's decision was based on a lack of substantial evidence, mistake of law, and conflict of interest.[29] In particular, Mr. Sparkman first argues that his proffered evidence from physicians and other health care providers "is far more credible and reasonable than that offered by" Prudential.[30] Second, he argues that he is entitled to judgment as a matter of law because Prudential "initially found that he was disabled and [his] condition has not changed." [31] Finally, he argues that since the Social Security Administration determined he is disabled, then Prudential's decision is arbitrary and capricious as well. Prudential responds that Mr. Sparkman's arguments are unpersuasive, and that it is entitled to summary judgment because its decision to terminate Mr. Sparkman's benefits was not arbitrary and capricious and clearly reasonable.

By Mr. Sparkman's own admission, Prudential's decision is arbitrary and capricious if "it is based on a lack of substantial evidence." [32] And "[s]ubstantial evidence is such evidence that a reasonable mind might accept as adequate to support the conclusion reached" by the plan administrator.[33] Such "substantial evidence" requires more than a scintilla of evidence, but less than a preponderance.[34] In order

---

23. Plaintiff's Memo. In Supp. Of Sum. Judg., No.35, at 8 (D.Utah Nov. 18, 2005).

24. *Allison v. Unum Life Ins. Co. of Am.*, 381 F.3d 1015, 1021 (10th Cir.2004) (quotation omitted). *See Chambers v. Family Health Plan Corp.*, 100 F.3d 818, 825 (10th Cir.1996).

25. *Chambers*, 100 F.3d at 825.

26. *Fought*, 379 F.3d at 1006 (quotations omitted).

27. Order on Sum. Judg. Standard, at 13.

28. *Fought*, 379 F.3d at 1006.

29. *See, e.g., Maez v. Mountain States Tel. and Tel., Inc.*, 54 F.3d 1488, 1505 (10th Cir.1995);

*Flint v. Sullivan*, 951 F.2d 264, 266 (10th Cir.1991).

30. Plaintiff's Memo. In Supp. Of Sum. Judg., No.35, at 12.

31. *Id.* at 17.

32. *Maez v. Mountain States Tel. and Tel. Inc.*, 54 F.3d 1488, 1505 (10th Cir.1995) (quotations omitted).

33. *Flint*, 951 F.2d at 266 (quotations omitted).

34. *Id.* (quotations omitted).

to survive summary judgment, since Prudential has already offered evidence of independent medical evaluations and its reasoned reliance on such evidence, Mr. Sparkman must show that Prudential's actions were not reasonable based on substantial evidence.

In light of this standard of review, Mr. Sparkman's contention that his medical doctors are more credible than those relied upon by Prudential is unpersuasive. It is clear that Dr. Sheretz and Dr. Gerson relied upon the medical reports submitted by Mr. Sparkman when making their independent evaluations. Prudential continually asked Mr. Sparkman for any relevant information he would like the evaluators to consider, and gave him the opportunity to provide that information numerous times. Mr. Sparkman must show that Dr. Sheretz's opinion was unreasonable, not that his own doctor's conclusions were superior.

Moreover, bald comparisons to certain statements made by other doctors (most who treated Mr. Sparkman years before Dr. Sheretz evaluated the current and up-to-date medical file) fail to contradict the reasonableness of Prudential's decision. Mr. Sparkman relies on conclusory assertions that Prudential's decision was not supported by substantial evidence because it disagreed with the conclusions of some of his physicians. Prudential, on the other hand, has given the court two reports from independent physicians that clearly support its determination to deny benefits. And these two reports also relied upon the exact same evidence offered by Mr. Sparkman's own physicians for their conclusions.

In the first report, Dr. Sheretz found that "Mr Sparkman has not had consistent management of his skin condition and that he could, despite occasional *treatable* temporary flare-ups, return to work in any occupation for which he is reasonably fitted by education, training, and/or experience." [35] She further stated that "[i]n my experience (18 years) of managing complex referral patients with chronic dermatitis, I have not seen a patient with hand and foot atopic dermatitis with this type of 'white collar' office/management work history who, with medical maintenance and therapy, had to cease work due to skin disease." [36] In the second report, Dr. Gerson was asked to determine whether the skin condition was the result of a psychiatric condition; he found no evidence to support such an idea. [37]

The court finds that Prudential provided a reasonable basis for its denial of Mr. Sparkman's claims, consistent with informed opinions by independent medical experts. Nothing in the relevant case law "suggests that plan administrators must accord special deference to the opinions of treating physicians." [38] Indeed, the independent medical experts examined the submitted reports of treating physicians and independently determined that Mr. Sparkman was not eligible for further disability benefits due to his medical record. And it is also clear that not all of the medical reports submitted by Mr. Sparkman completely agreed on Mr. Sparkman's treatment and prognosis. As Prudential colorfully observes, "[s]hort of a 'grassy knoll' conspiracy among Prudential and its retained [independent] experts, there is nothing unreasonable about Prudential's

**35.** PRU 0544–0547 (Letter from Dr. Elizabeth F. Sheretz, dated Mar. 26, 2001) (emphasis in original).

**36.** *Id.*

**37.** PRU 0169–0174 (Letter from Dr. Stephen N. Gerson, dated December 11, 2002).

**38.** *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 831, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003).

actions." [39] Since it is clear that Prudential's independent medical experts were not in-house experts, and since Prudential is accorded much deference in this sliding-scale review, the court finds Mr. Sparkman's contentions about Prudential's experts being "less credible" unpersuasive. Given these two independent reports, which Mr. Sparkman fails to rebut with evidence that such reports are tainted by bias, conflict or any other reason, the court finds that Prudential's decision to deny benefits was grounded on a reasonable basis.

Mr. Sparkman's other two arguments are also wholly unpersuasive to the court. First, whether Prudential awarded benefits initially upon Mr. Sparkman's application is irrelevant to this case. Although Mr. Sparkman might claim that Prudential's initial actions constituted a meritorious decision on his disability coverage, there is no case law concluding that an insurance or plan administrator's decision to initially award benefits precludes future evaluations or revocations. In the disability insurance context, such an argument would effectively penalize an insurer for giving a claimant the initial benefit of the doubt by granting benefits in the first place.

Second, the Social Security Administration's determination that Mr. Sparkman is disabled is relevant only to the weight of evidence, but does not provide an estoppel argument in Mr. Sparkman's favor. Mr. Sparkman argues that because an independent third party found him disabled, Prudential's decision to deny disability benefits lacked reasonableness. Prudential's independent medical experts found Mr. Sparkman not totally disabled, however, and the Social Security Administration's decision is not binding in this case. Indeed, other courts have consistently held that "benefits eligibility determinations by the Social Security Administration are not binding on disability insurers." [40] And Mr. Sparkman fails to provide any evidence that the Social Security Administration's disability determination in any way mirrors the relevant definition of "total disability" under his policy.[41] Although such a contention might go to the weight of the evidence in favor of Mr. Sparkman's disability coverage, it is clear that Prudential did consider the SSA's determination and also clear that it relied on independent medical evaluations to deny his claim. As such, the Social Security Administration's determination is not conclusive proof that Mr. Sparkman was disabled, nor does it demonstrate that Prudential unreasonably denied Mr. Sparkman disability benefits.

## CONCLUSION

Based on the submitted administrative record and the arguments of both parties, the court finds that Prudential reasonably relied upon independent medical evaluations and all of the records submitted by Mr. Sparkman in denying his claim for further disability benefits. Prudential bears the burden of proving the reasonableness of the decision pursuant to the court's traditional arbitrary and capricious standard, and the court finds that Prudential has met that burden. Given these findings, the court GRANTS Prudential's

---

**39.** Defendant's Memo. In Opp., No. 41, at 4 (D.Utah Dec. 16, 2005).

**40.** *Pari–Fasano v. ITT Hartford Life & Accident Ins. Co.,* 230 F.3d 415, 420 (1st Cir. 2000); *Elliott v. Sara Lee Corp.,* 190 F.3d 601, 607 (4th Cir.1999); *Doyle v. Paul Revere Life Ins. Co.,* 144 F.3d 181, 186 n. 4 (1st Cir.1998). Cf. *Boyd v. Trustees of the United Mine Workers Health & Retirement Funds,* 873 F.2d 57, 58, 59 (4th Cir.1989).

**41.** *Elliott,* 190 F.3d at 607.

**1126**

motion for summary judgment (# 36) and DENIES Mr. Sparkman's motion for summary judgment (# 34).

The Clerk's Office is directed to close the case.

SO ORDERED.